UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

DAMON LAMONT POINDEXTER,

                Petitioner,                Case No. 1:13-cv-1109

v.                                        Honorable Robert Holmes Bell

MARY BERGHUIS,

                Respondent.
_____/

OPINION

        This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner seeks to overturn his plea-based convictions in Saginaw County Circuit Court for carrying a dangerous weapon with unlawful intent, carrying a firearm by a felon, felony firearm, and assault with intent to commit great bodily harm less than murder. In accordance with the terms of the plea agreement, Petitioner was sentenced as an habitual offender, fourth felony offense, MICH. COMP. LAWS § 769.12, to a consecutive two-year sentence for the felony-firearm conviction and concurrent sentences of five to twenty years' imprisonment on the other convictions.

        After unsuccessful attempts to overturn his plea-based convictions in Michigan's courts, Petitioner filed his federal habeas corpus petition. He asks this Court to overturn his convictions on grounds rejected by Michigan's courts:

    I.     The trial court violated petitioner's Fifth and Sixth Amendment rights by not accepting plaintiff's demand that the court replace his trial counsel.

    II.    Petitioner was deprived of his Sixth and Fourteenth Amendment right to counsel by his attorney's failure to investigate petitioner's case or seek an adjournment.

(Pet., 6-7, ECF No. 1, PageID.6-7.)

On August 28, 2014, respondent filed her answer to the petition.  Respondent argues that the petition should be denied for lack of merit.  (Resp't's Answer, 23-37, ECF No. 7, PageID.70-84.)  After review of the state-court record, the Court concludes that the habeas petition should be denied for lack of merit in the grounds presented.

### Procedural and Factual Backround

Petitioner was charged with assault with intent to murder, carrying a dangerous weapon with unlawful intent, felon in unlawful possession of a firearm, felony firearm, and being an habitual offender, fourth felony offense.  (ECF No. 8-1, PageID.94.)   Following a preliminary examination held on October 7, 2010, Petitioner was bound over for trial on all of the charged offenses.  (PE, 35-36, PageID.134-35.)

Petitioner's trial was originally scheduled to begin on February 15, 2011.  That trial date was adjourned.  Petitioner's attorney had requested a forensic examination in October 2010, and the court had granted his motion.  As of February 15, 2011, the court did not have the results of the forensic examination.  (ECF No. 8-3, PageID.138.)  Petitioner's trial was rescheduled for April 2011.

On April 26, 2011, the court granted Petitioner's attorney's motion for an adjournment.  At that time, the parties anticipated that the forensic report would be completed within two weeks.  (ECF No. 8-4, PageID.140-143.)   On June 27, 2011, the trial court conducted a competency hearing and determined that Petitioner was competent to stand trial.   The court rescheduled trial to begin on July 19, 2011.  (ECF No. 8-5, PageID.147-148.)

The prosecutor filed a motion in limine to use Petitioner's prior convictions for impeachment purposes.  (ECF No. 8-6, PageID.150.)   On July 18, 2011, the court conducted a hearing on this motion.  During the course of this hearing, one day before his trial was scheduled

to begin, Petitioner asked the court to remove defense counsel and either appoint new counsel or adjourn the trial date so that Petitioner could try to hire an attorney.  The court denied Petitioner's requests, concluding that it was impossible to get Petitioner a new attorney one day before trial.  The trial court noted that the case was quite old, was the number-one case set for trial the next day, and the trial had already been adjourned on multiple occasions.  (ECF No. 8-7, PageID.154-155.)

The following day, July 19, 2011, Petitioner entered his guilty plea.  (Plea Transcript (PT), ECF No. 8-8.)  The transcript reveals that the terms of the plea agreement were reviewed with plaintiff at length.  The prosecution agreed to drop the charge of assault with intent to commit murder and allow Petitioner to plead guilty of the lesser charge of assault with intent to do great bodily harm less than murder.  Petitioner understood that he faced a potential life sentence on the charge of assault with intent to commit murder.  (PT, 4-5, PageID.161-162.)  In addition, the prosecution agreed to drop the charge against Petitioner for possession of a weapon in jail. Petitioner expressed his understanding that, as a habitual offender, he faced a potential life sentence if convicted of that offense.  (PT, 6-7, PageID.163-164.)  Petitioner stated that he understood that he would be pleading guilty to carrying a dangerous weapon with unlawful intent, possession of a firearm by a felon, felony firearm, and assault with intent to commit great bodily harm and that he would acknowledge his status as an habitual offender, fourth felony offense.  (PT, 7, PageID.164.) As a habitual offender, Petitioner faced potential life sentences on all of the charges other than the felony-firearm charge.  (PT, 9-11, PageID.166-68.)  However, the plea agreement negotiated by Petitioner's attorney was a *Cobbs*[1] plea agreement, where Petitioner would receive an extremely

---

[1]In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved a process under which a judge conducts a preliminary evaluation of the case and makes a tentative offer of the sentence prior to a defendant's entry of a plea.  The supreme court held that such an agreement was lawful, if the defendant was given the right to withdraw the plea when and if the judge on full review decided not to honor the earlier agreement).

favorable sentence.  Instead of facing life sentences he faced a sentence of seven years.  The felony-firearm conviction carried a mandatory two years, and it was required to be served before the sentence for assault with intent to do great bodily harm.  (PT, 5, PageID.162-163.)  The prosecutor also agreed to recommend a sentence of no more than five years on the assault with intent to do great bodily harm conviction.  (PT, 4, PageID.161.)  Thus, with agreement that Petitioner would receive credit for time served counting against the two year sentence on the felony-firearm conviction, Petitioner faced six years, plus a few months.[2]  (PT, 5-7, PageID.162-164.)

Petitioner asked the court to accept the plea agreement.  (PT, 8, PageID.165.) Petitioner acknowledged that he had had a chance to read and had signed the advice of rights form and had reviewed those rights with his attorney.  He also appeared to understand those rights.  In addition, he acknowledged that he understood the rights that he would be giving up by pleading guilty. (PT, 12-13, PageID.169-170.) Petitioner told the trial court that he was voluntarily pleading guilty because he was guilty:

> THE COURT:         You understand you'd be giving up any claim that it was not your own  free choice to plead guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:         You understand I'm not bound to follow the sentence recommendation made by the prosecutor, but if I don't do that, I would allow you to withdraw your plea.  Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT:         Other than what we have said in court today, has anybody promised you anything if you plead guilty?
>
> THE DEFENDANT: No, sir.

---

[2]Petitioner was on probation and understood that, by pleading guilty, he could be resentenced by the judge who had sentenced him to probation.  (ST, 9, PageID.166.)

THE COURT:         Has anybody threatened you to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT:         Is it your own free choice to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT:         Are you pleading guilty because you are in fact guilty?

THE DEFENDANT: Yes, sir.

(PT, 13-14, PageID.170-171.)

Petitioner pleaded guilty to carrying a dangerous weapon with unlawful intent, carrying a firearm as a felon, felony firearm, and assault with intent to commit great bodily harm less than murder.  (PT, 11, PageID.168.)  Petitioner acknowledged his prior felony convictions for unarmed robbery, being a prisoner in possession of a weapon, larceny in a building and conspiracy to commit larceny in a building.  (PT, 11-12, PageID.168-169.)  In addition, Petitioner recited a factual basis for each of his guilty pleas.  He stated that, on September 25, 2010, he had been at a residence in Saginaw, Michigan.  On that date, Petitioner assaulted Tenisha Poindexter with intent to do great bodily harm less than murder.  At the time Petitioner committed this assault, he possessed a pistol.  Petitioner had previously been convicted of the felony of unarmed robbery and was ineligible to possess such a weapon.  He carried that weapon with the intent to unlawfully use it against the person of another. (PT, 14-15, PageID.172-73.)  Following the plea colloquy, the court accepted Petitioner's plea because it was voluntary, knowing and accurate. (PT, 16, PageID.173.)

On August 25, 2011, the trial court conducted a sentencing hearing. (ECF No. 8-11.) At the outset of the sentencing hearing Petitioner sought to withdraw his guilty plea.  (ST, 3, PageID.181.)  The court denied his request and sentenced Petitioner in accordance with his plea agreement.  (ST, 5, 9, PageID.183, 187.)

-5-

Petitioner, through appellate counsel, moved to withdraw the guilty plea. On April 30, 2012, the trial court conducted a hearing on Petitioner's appellate counsel's motion to withdraw Petitioner's guilty plea and denied the motion for lack of merit. (HT, 8-13, PageID.200-203.) The trial judge noted that before making his decision he had reviewed the motion, memorandum of law and letter from Petitioner, which were offered in support of the motion. In addition, he had reviewed the transcript of the guilty plea and transcript of the preliminary examination. He observed that Petitioner's attorney met with him on at least three occasions and had explored potential defenses by having Petitioner sent to a forensic center. (*Id.* at 3-4, PageID.202-03.) Petitioner's attorney "did a stellar job getting him the plea offer he got him." (*Id.* at 4, PageID.203.) Petitioner was facing a charge of assault with intent to murder which carried a possible life sentence. Petitioner's attorney secured a plea agreement which allowed Petitioner to plead to assault with intent to do great bodily harm and receive a sentence at "pretty much the lower end of the guidelines." (*Id.*) "The plea was taken properly. He indicated that he was freely and voluntarily pleading guilty." (*Id.*)

Petitioner's appellate counsel filed a delayed application for leave to appeal in the Michigan Court of Appeals. Petitioner argued that his plea-based convictions should be overturned on the grounds he now raises in his habeas corpus petition. (ECF No. 8-14, PageID.216.) On July 11, 2012, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." (7/11/12 Order, ECF No. 8-14, PageID.205.)

Petitioner sought leave to appeal to Michigan's highest court. He raised the same grounds that were rejected by the Court of Appeals for lack of merit. (ECF No. 8-15, PageID.245.) On November 20, 2012, the Michigan Supreme Court denied leave to appeal because it was not

persuaded that the questions presented should be reviewed by the court.   (ECF No. 8-5, PageID.239.)

On October 8, 2013, Petitioner filed the instant habeas corpus petition, raising the same two grounds presented to and rejected by the Michigan courts.   (ECF No. 1.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).   This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the

decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th

Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).   The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

I.      Denial of Requests for New Counsel or Adjournment

In Ground I of his habeas application, Petitioner argues that the trial court judge violated his Fifth and Sixth Amendment rights when he denied the oral requests for new counsel or

adjournment of trial, which  Petitioner made during a hearing the day before trial. (Pet., 6, ECF No. 1, PageID.6; Pet'r's Br., i, 1-7, ECF No. 1-1, PageID.16, 22-28.)

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  One element of that right is the right to have counsel of one's choice.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).  However, the right to counsel of choice is not without limits.  *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).  "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).  "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'"  *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").  Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice."  *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

Nonetheless, a criminal defendant who can afford his own attorney has the qualified right to his chosen attorney.  *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993); *see also Burton v. Renico*, 391 F.3d 764, 771-72 (6th Cir. 2004) (holding that "a defendant has a right

-10-

to a '*fair opportunity* to secure counsel of his own choice'") (emphasis in original) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  The decision on this type of motion traditionally lies within the discretion of the trial judge, and not every denial violates due process, even if the party fails to offer evidence or is compelled to defend without counsel.  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  Thus, "[d]enial of a continuance to secure counsel rises to the level of a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Murray v. Slappy*, 461 U.S. 1, 11-12 (1983) (internal quotations omitted).  There are no "mechanical tests" for deciding when the denial is so arbitrary as to violate due process; rather, the Court must look to the circumstances of the case, particularly in the reasons presented to the trial judge at the time the request is denied.  *Ungar*, 376 U.S. at 589.  "Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003); *see also Landrum v. Mitchell*, 625 F.3d 905, 927 (6th Cir. 2010).  In addition, "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir.1997) (internal quotation marks and citation omitted).  "'Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense.'" *Landrum v. Mitchell*, 625 F.3d 905, 928 (6th Cir. 2010) (quoting  *Powell*, 332 F.3d at 396); *see also Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000).

The Michigan Court of Appeals rejected petitioner's claims for lack of merit. That determination constituted a reasonable application of established Supreme Court precedent.  At the

outset of his case, Petitioner requested that counsel be appointed for him, and he was represented by appointed counsel at the time he made his request.  (Cir. Ct. Register of Action, ECF No. 8-1, PageID.94.)  Although Petitioner expressed his intent to "try to get a hired attorney," (ECF No. 8-7, PageID.155), he provided no indication that his indigency status had changed at the time he made his request.  As a result, as an indigent defendant, he was required to demonstrate entitlement to the "qualified right to his chosen attorney."  *Serra*, 4 F.3d at 135.  Petitioner argued that this trial attorney had not provided a copy of an unspecified portion of the police reports and had never come to see him.  (*Id.*, PageID.154.)  Defense counsel, however, represented to the court that he had visited Petitioner on at least three occasions.  The trial court apparently found the attorney more credible, as it denied the request for new counsel, concluding that trial counsel was fully able to "do a fine job for you."  (*Id.*, PageID.156.) The trial court's decision is entitled to a presumption of correctness, which must be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e).  Petitioner utterly fails to rebut the finding, and the record fully supports the trial court's determination.  (ECF No. 8-7, PageID.154-55.)

Further, the trial court reasonably considered that the case had been delayed on numerous prior occasions, was set for trial the next day, and that new counsel would not be able to be found before that date.  Given that Petitioner made no showing that he would have been able to find and pay for substitute counsel, even if granted a continuance, he fails to demonstrate that the trial court's decision was egregious and fundamentally unfair.  As a consequence, Petitioner cannot demonstrate that either the trial court or the court of appeals unreasonably applied established Supreme Court precedent in denying his motion to substitute counsel or for a continuance.

II.   Ineffective Assistance of Counsel

In his second ground for habeas relief, Petitioner argues that he was deprived of his Sixth and Fourteenth Amendment right to counsel by his attorney's failure to investigate Petitioner's case or seek an adjournment.   (Pet., 7, ECF No. 1, PageID.7; Pet'r's Br. at i, 7-14, ECF No. 1-1, PageID.16, 28-35.)  The Michigan courts rejected Petitioner's claims of ineffective assistance of counsel on the merits.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.  As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.   Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. Jul. 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001)).

Petitioner's claims of ineffective assistance do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate with respect to the plea, but

instead relate to earlier alleged attorney failures.  As is apparent from the record, on the day prior to his decision to plead guilty, Petitioner raised his objections to counsel's performance and requested new counsel or a continuance.  Only after his motion to appoint new counsel or continue the case had been denied did Petitioner decide to plead guilty.  Petitioner's claims therefore have been waived by his subsequent guilty plea.  *See Stiger*, 20 F. App'x at 308-09; *see also Parisi v. United States*, 529 F.3d 134, 138-39 (2d Cir. 2008) (claims of ineffective assistance with respect to matters preceding the plea agreement are waived by a guilty plea); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (guilty plea waives claims concerning pre-plea ineffective assistance of counsel); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).  Petitioner, therefore, is not entitled to habeas corpus relief on the alleged errors in counsel's performance.

**Conclusion**

In light of the foregoing, the Court will deny Petitioner's application because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529

U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

        The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

        A Judgment and Order consistent with this Opinion will be entered.


Dated: <u>December 2, 2016</u>                    <u>/s/ Robert Holmes Bell            </u>
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE